RECEIVED
IN LAFAYETTE, LA.

DEC 1 7 2009

TONY R. MOORE, CLERK
BY _____
                DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

SECURITIES AND EXCHANGE                  CIVIL ACT. NO 09 - cv- 0928
COMMISSION

V.                                        JUDGE MELANÇON

ROBERT L. HOLLIER                         MAGISTRATE JUDGE HANNA
WAYNE A. DUPUIS

### *REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS*
### *(Rec. Docs. 15, 16 )*

Before the court are two motions to dismiss filed by defendants Wayne A.

Dupuis and Robert Hollier (Rec. Docs. 15, 16), seeking dismissal of plaintiff

SEC's  claims pursuant to Rules 12(b)(6) for failure to state a claim and 9(b) for

failure to plead fraud for particularity.  Plaintiff filed an opposition and defendant

Dupuis has replied.[1]  The motions were referred to the undersigned for report and

recommendation.  For the following reasons, it is **RECOMMENDED** that the

motions be denied.

---

[1] Rec. Docs. 20 and 24.

2

### *Background*

The instant complaint is based upon allegations that Dupuis and his longtime friend Hollier, a director of Warrior Energy Services Corporation, engaged in insider trading and tipping.

The plaintiff asserts that the facts alleged in its complaint provide strong circumstantial evidence that Hollier tipped Dupuis about a pending merger between Warrior Energy and another energy services company during a hunting trip that they attended together between September 13 and 17, 2006. Plaintiff alleges that on September 18, 2006, when Dupuis allegedly returned from the hunting trip, he purchased 5,000 shares of Warrior Energy stock for approximately $85,000; on September 25, 2006, Warrior Energy announced a merger agreement with Superior Energy Services, Inc. ("Superior Energy"); and Warrior Energy shares increased in price by almost 70 percent on the news that day. According to the complaint, Dupuis sold his shares on October 3, 2006, for a profit of $41,800.

3

Plaintiff seeks injunctive relief, alleging violations of §21(d) and 21(e) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b)[2] and Rule 10b-5, 17 C.F.R. §240.10b-5.[3]

Defendants have not yet answered the Complaint, but rather filed the instant motions seeking dismissal of plaintiff's claims.

## *The Complaint*

The plaintiff alleges the following:

Between early August 2006 and September 12, 2006, Hollier learned material nonpublic information about a proposed merger between Warrior Energy

---

[2] **§ 78j. Manipulative and deceptive devices**

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange–
\* \* \*
*(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange* or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), *any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.*
(emphasis supplied)

[3] **17 C.F.R. §240.10b-5 Employment of manipulative and deceptive devices.**

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

4

and Superior Energy.  (Complaint ¶¶ 2-3, 16-24.)  Specifically, Hollier attended

four Warrior Energy board meetings between August 28, 2006, and September 12,

2006, at which the merger was discussed in detail.  (Complaint ¶¶ 3, 16-26.)  By

the fourth such board meeting, which was held on September 12, 2006, Warrior

Energy management "had reported that (a) Superior Energy contemplated paying a

significant premium over the market price for Warrior Energy shares, (b) both

parties had substantially completed the due diligence process, and (c) the board's

consideration of a definitive merger agreement was imminent." (Complaint ¶ 24.)

Even though the share prices of both Warrior Energy and Superior Energy had

declined from late August 2006 to September 12, 2006, a Warrior board member

reported at the September 12, 2006 board meeting that "from a deal perspective

there were a number of ways to handle market fluctuation."  (Complaint ¶ 24.)

As to the timing, location, and substance of the tip, plaintiff alleges:

Hollier tipped Dupuis about the pending merger between Warrior
Energy and Superior Energy, another oil services company, during
the Canada hunting trip that Hollier and Dupuis both attended.

* * *

From September 13 to September 17, 2006 (Wednesday through
Sunday), Hollier and Dupuis attended a duck and goose hunting trip
together in Peace River, Canada.  The hunting party consisted of
about ten men in total, all of whom were friends or relatives of
Hollier's.

5

* * *

During the hunting trip, Hollier and Dupuis discussed the merger agreement between Warrior Energy and Superior Energy.

* * *

During the hunting trip, Hollier advised some men on his hunting trip one evening after dinner . . . when asked by one of the men what was "wrong" with Warrior (in apparent reference to the company's declining share price) that "fundamentally nothing was wrong with the stock."

Hollier's conversation about Warrior Energy's stock price with the men on the hunting trip was not an extended conversation, but one that took only a few minutes.

* * *

Dupuis overhead the conversation about Warrior Energy and asked, "What company are y'all taking about," to which Hollier replied, "Warrior Energy."

* * *

At some point, most likely during the hunting trip, Dupuis directly asked Hollier whether Warrior Energy represented a "good buy," and Hollier's confirmation in response thereto influenced Dupuis' purchase of Warrior Energy Shares.

On Monday, September 18, 2006, one day after returning from the hunting trip, Dupuis, who had no prior history trading Warrior Energy shares, purchased 5,000 shares of Warrior Energy at $17 per share, for a total cost of approximately $85,000. (Complaint ¶¶ 39, 44.) Dupuis entered the order himself on-line, and, to

6

come up with cash for the purchase, sold his entire positions in the only two stocks held in his investment portfolio (each of which resulted in a long-term loss), and also cashed out of a money market fund. (Complaint ¶¶ 40-41.)

When Warrior Energy and Superior Energy announced the merger agreement on September 25, 2006, Warrior Energy's share price closed at $24.22 per share, representing an increase of nearly 70 percent over the prior day's closing price of $14.34 per share. (Complaint ¶ 26.) Dupuis sold his Warrior shares shortly thereafter on October 2, 2006, at a price of $25.36 per share, for a profit of approximately $41,000. (Complaint ¶ 43.)   Dupuis's quick purchase and quick sale of Warrior Energy stock in 2006 was inconsistent with his stock trading history, which established Dupuis as a long-term investor who looked for capital appreciation. (Complaint ¶¶ 47, 49-50.)

As a director of a public company, Hollier was aware "that insiders are to keep information that isn't generally available to the public confidential to the organization." (Complaint ¶ 27.) As of September 12, 2006, when he left for the hunting trip, Hollier viewed the merger as a "potentially material event that was to be kept confidential." (Id.) Hollier was aware that, starting in August 2006, in connection with the negotiation of the merger agreement, Warrior Energy had instituted a blackout period restricting employees from trading the company's shares. (Complaint ¶ 28.)

7

Hollier and Dupuis have maintained a close friendship since high school, and that Dupuis was aware that Hollier was a member of Warrior Energy's board of directors.  (Complaint ¶¶ 30, 51.)  When Dupuis bought Warrior Energy shares, he was aware of the contemplated merger and expected the price of Warrior Energy shares to increase on the news, when the announcement was made. (Complaint ¶ 54.)

### *Issues Presented*

Defendants seek dismissal of the plaintiff's claims on grounds that (1) the facts alleged by the plaintiff, taken as true, do not constitute a violation of the securities law;  and (2) if they do, the plaintiff has failed to state its claim with sufficient particularity under Rule 9(b).

### *Standard for Motions to Dismiss*

Motions to dismiss are viewed with disfavor and rarely granted. *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted), *quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to

8

state a claim to relief that is plausible on its face.'" *In re Katrina Breaches Litig.*, 495 F.3d at 205, *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*, *quoting Bell Atl.*, 127 S.Ct. at 1965. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl.*, 127 S.Ct. at 1964-65 (citations, quotation marks, and brackets omitted) (emphasis added). *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

Determining whether a complaint states a plausible claim for relief is, therefore, a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Ashcroft*, 129 S.Ct. at 1950. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id.* at 1950. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.*

9

### *Rule 10b-5*

Section 10(b) of the Exchange Act, 17 C.F.R. § 240.10b-5 (2009), provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

The primary elements of tipper/tippee liability are (1) the tipper acted willfully and with a mental state known as "scienter," (2) the tipper communicated material nonpublic information to the alleged tippee with the intent of giving the outsider an informational advantage in shares of the company; (3) the tippee traded in securities while in possession of the nonpublic information provided by the tipper; and (4) the tippee knew or should have known that the tipper violated a relationship of trust by relaying the information. *See* <u>Dirks v. SEC</u>, 463 U.S. 646, 660-665 (1983); <u>U.S. v. Ohagan</u>, 521 U.S. 642, 651-666 (1997).

10

An insider of a corporation violates Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder, if he breaches a duty to the corporation by disclosing material, nonpublic information to an outsider.  Dirks, 463 U.S. at 659-660, 662. An insider breaches his fiduciary duty by conveying inside information when he "will personally benefit, directly or indirectly, from his disclosure." Dirks, 463 U.S. at 662.  A tipper can derive a personal benefit by using the information to secure a pecuniary gain, a reputational benefit that will translate into future earnings, or simply to confer a gift of confidential information to a relative or friend who trades on the information or who tips others who trade.  Id. at 663-64; see also Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 312, n.21 (1985).

A tippee violates Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by trading on the basis of material non-public information, if the tippee knew or is reckless in not knowing that the information was disclosed in breach of a fiduciary duty.  Dirks, 463 U.S. at 659-64.

"Scienter requires that the insider (or tippee, if the trader is not the insider) possess material nonpublic information at the time of the trade." S.E.C. v. Ginsburg,. 362 F.3d 1292, 1297 -1298 (11th Cir. 2004), *quoting* SEC v. Adler, 137

F.3d 1325, 1340 (11th Cir. 1998). "Proof of knowledge of such information at the time of a trade 'gives rise to a strong inference of use.'" Id.

In U.S. v. Larrabee, 240 F.3d 18, 21 -22 (1st Cir. 2001), the First Circuit Court of Appeals held that circumstantial evidence may be used to prove insider training, including (1) access to information; (2) relationship between the tipper and the tippee; (3) timing of contact between the tipper and the tippee; (4) timing of the trades; (5) pattern of the trades; and (6) attempts to conceal either the trades or the relationship between the tipper and the tippee.

Here, the undersigned finds that the plaintiff's allegations are sufficiently particularized to set forth a claim of insider trading. Much of defendants' argument is fact driven and disputes the plaintiff's allegations; however, a motion to dismiss and not a motion for summary judgment is before the court at this juncture and all inferences, accepting the allegations of the complaint as true, must be drawn in the plaintiff's favor.

The complaint alleges that Hollier and Dupuis have been friends since childhood; Hollier, as a director of Warrior, had access to non-public information of a potential merger on September 12, 2006 which Dupuis allegedly discussed with Hollier during the hunting trip from September 13 through September 17; the defendants concede at argument that, if true as it is alleged, the potential merger

12

would be non-public information; on September 18, the day after he returned from

the hunting trip, Dupuis purchased 5,000 shares of Warrior Energy stock in a

manner that was inconsistent with his trading history and investment strategy; on

September 25, Warrior announced the merger with Superior Energy; Warrior

Energy's shares immediately increased in value by almost 70%; and Dupuis sold

his shares on October 3, 2006 for a profit of $41,800.  Based on these allegations,

the undersigned concludes that the plaintiff has, based on circumstantial evidence,

sufficiently alleged the timing, location, and substance of the tip to plausibly state

a claim for relief.

### *Sufficiency of Securities Fraud Allegations under Rule 9(b)*

A dismissal for failure to plead fraud with particularity under Rule 9(b) is

treated as a dismissal for failure to state a claim under Rule 12(b)(6).  <u>Lovelace v.</u>

<u>Software Spectrum, Inc.</u>, 78 F.3d 1015, 1017 (5th Cir.1996).  A dismissal for

failure to comply with Rule 9(b) is almost always with leave to amend.  <u>Summer v.</u>

<u>Land & Leisure, Inc.</u>, 664 F.2d 965, 970 -971 (5th Cir.  1981), relying on 2A

Moore's Federal Practice, P 9.03.

"While the Federal Rules of Civil Procedure generally require in a

complaint only a short and plain statement of the cause of action, Rule 9(b) states

that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or

mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of a mind of a person may be averred generally.'" Id. "To plead fraud with particularity a plaintiff must include the " 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." Id. The Fifth Circuit has stated, "[d]irectly put, the who, what, when, and where must be laid out before access to the discovery process is granted." Williams v. WMX Technologies, Inc., 112 F.3d 175, 178 (5th Cir. 1997).[4] Articulating the elements of fraud requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. Id. at 177.

Although Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent. S.E.C. v. Ballesteros Franco, 253 F. Supp.2d 720, 731 -732 (S.D.N.Y. 2003). This strong inference can be established either "(a) by alleging facts to show that

---

[4] "Rule 9(b) has four purposes: to ensure that the defendant has sufficient information to formulate a defense by having notice of the conduct complained of; to protect defendants against frivolous suits; to eliminate fraud actions in which all the facts are learned after discovery; and to protect defendants from undeserved harm to their goodwill and reputation. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir.1999)." U.S. ex rel. Wilkins v. North American Const. Corp., 173 F. Supp.2d 601, 614 (S.D. Tex.2001).

14

defendants had both motive and opportunity to commit fraud, or (b) by alleging

facts that constitute strong circumstantial evidence of conscious misbehavior or

recklessness." Id.  In the context of an insider trading claim, the specific facts

with respect to the insider tips are often within the control and knowledge of the

defendants, and therefore, Rule 9(b) is less stringent, so as to allow circumstantial

evidence to plead the specific content and circumstances of insider tips. Id.

Defendants assert that the plaintiff must allege the specific content of the tip

and the plaintiff's allegations are conclusory and insufficient to support an

inference of fraudulent intent.

In a case cited by each of the parties, S.E.C. v. Platt, 565 F. Supp. 1244,

1260 (W.D. OK 1983), the court noted:

> at the outset that the rule only requires the complainant to set out the
> circumstances constituting fraud with particularity; the rule does not
> require the complainant to state the evidentiary facts constituting
> fraud with particularity.

The court denied the motions to dismiss before it, stating:

> Defendants wish the court to require plaintiff to set forth in the
> complaint an exact quotation of the tips which allegedly passed from
> one defendant to another. This would go too far. The only persons
> who know what was said in June, 1981, are joined as defendants in
> this case. Plaintiff cannot read their minds. Plaintiff has done the best
> practicable under the circumstances by alleging the substance of the
> tip and when it was allegedly passed to each defendant. It would
> contravene the broad remedial policies behind the federal securities

15

laws to dismiss the complaint for failure of the plaintiff to plead their evidentiary facts when neither the securities laws nor the case law require such specificity.

Id.

The plaintiff has not alleged the specific contents of the tip; however, it is not required to do so but can rely on circumstantial evidence since such information would be possessed uniquely by Hollier and Dupuis. Here, as discussed, the plaintiff has alleged a motive of profit and an opportunity during the hunt. Moreover, the plaintiff has alleged facts showing that Dupuis had knowledge of the proposed merger and bought shares within days of the actual merger, different from his normal trading patterns, and earning a significant profit. Accordingly, the undersigned finds that the plaintiff has set forth particularized facts sufficient to state a claim for fraud.

### *Conclusion*

Considering the foregoing,

**IT IS RECOMMENDED** that defendants' motions to dismiss be **DENIED.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with

the Clerk of Court.  A party may respond to another party's objections within

fourteen (14) days after being served with a copy of any objections or responses to

the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or**

**the proposed legal conclusions reflected in this Report and Recommendation**

**within fourteen (14) days following the date of its service, or within the time**

**frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from**

**attacking either the factual findings or the legal conclusions accepted by the**

**District Court, except upon grounds of plain error.  See <u>Douglass v. United</u>**

**<u>Services Automobile Association</u>, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana on this ____16th____ day of _December, 2009_

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE