UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Securities & Exchange Commission          Civil Action No. 6:09-CV-0928

versus                                    Judge Tucker L. Melançon

Hollier, et al                            Magistrate Judge Patrick J. Hanna

## MEMORANDUM RULING

Before the Court are Motions for Summary Judgment filed by defendants, Robert L. Hollier, [Rec. Doc. 71] and Wayne A. Dupuis [Rec. Doc. 75][1], plaintiff's, Securities & Exchange Commission, Opposition thereto [Rec. Doc. 83] and Hollier's reply thereto [Rec.Docs. 91]. For the reasons that follow, defendants' motions for summary judgment will be denied and Hollier's motion to strike will be granted.

## I. BACKGROUND

This litigation arises from the Securities & Exchange Commission ("the SEC") allegations of insider trading in the securities of Warrior Energy Services Corporation ("Warrior Energy") by defendants, Robert L. Hollier and Wayne A. Dupuis. The SEC alleges that Dupuis received tips directly or indirectly from Hollier who was, at the time, in possession of material, nonpublic information by virtue of his status as a member of Warrior Energy's Board of Directors. The SEC Complaint, *R. 1,* alleges the following:

> Hollier had knowledge of pending merger talks between Warrior Energy and Superior Energy Services, Inc. ("Superior Energy") as early as the latter part of August 2006. In fact, the merger was discussed extensively at a board meeting the day before Hollier left for a hunting trip in Canada in September 2006. Hollier tipped Dupuis about the pending merger between Warrior Energy and Superior Energy, another energy services company, during the Canada hunting trip that Hollier and Dupuis both attended. On September 18,

---

[1] Dupuis' motion for summary judgment adopts the submissions in support of Hollier's motion for summary judgment. *R. 75.* Thus, the Court's references to Hollier's motion will also include Dupuis' motion.

    2006, the day Dupuis returned from the hunting trip, he purchased 5,000 shares of Warrior Energy stock for approximately $85,000. Dupuis, who had no prior history of trading Warrior Energy shares, sold the only two stock holdings he held in his portfolio in order to purchase the Warrior Energy shares. On September 25, 2006, Warrior Energy announced a definitive merger agreement with Superior Energy. Warrior Energy shares, which were then traded on the Nasdaq National Market, increased in price by almost 70% on the news that day. On October 3, 2006, Dupuis sold all of his Warrior Energy stock for a profit of approximately $41,800.

*R. 1, ¶¶ 3-8.*

The SEC contends that defendants have committed acts in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15, U.S.C. 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5], and requests that the Court enjoin defendants from engaging in transactions, acts, practices and courses of business alleged in the Complaint.

  Section 10(b) of the Exchange Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Pursuant to its statutory authority, the SEC has promulgated Rule 10b-5, which provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
>  (a) To employ any device scheme or artifice to defraud,
>
>  (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
>  (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

  On May 19, 2010, defendant Hollier filed a motion for summary judgment asserting

that the SEC's claim against him is purely circumstantial and based solely on the SEC's suspicion about the timing of Dupuis's trade. *R. 43*. The SEC filed an opposition to defendants' motions pursuant to Rule 56(f)[2], contending that the motions were premature as they were filed only days after the Magistrate Judge directed the filing of the parties' Rule 26(f) Reports, and were filed prior to the taking of any depositions in this action. *R. 47*. The Court granted the SEC's motion holding that the SEC was entitled to conduct discovery involving individuals related to the hunting trip in question and the events surrounding the Superior Energy and Warrior Energy merger. *R. 56*. The Court stated that defendants could reassert their motions once the parties had an opportunity to conduct discovery. *Id*. Defendants filed the motions at bar on November 18 and 19, 2010. *R. 71, 75*.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id*. If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however,

---

[2] Under the 2010 Amendments to the Federal Rules of Civil Procedure, former Rule 56(f) became Rule 56(d), "When Facts Are Unavailable To The Nonmovant." FRCP 56(d).

the burden shifts to the non-moving party to show that there is a genuine issue for trial.[3] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(c)[4]. The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(a)[5]; *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact,

---

[3] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

[4] Rule 56(e) prior to the 2010 Amendments to the Federal Rules of Civil Procedure.

[5] Rule 56(c) prior to the 2010 Amendments to the Federal Rules of Civil Procedure.

however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. LAW & ANALYSIS

In their motions for summary judgment, defendants contend that the SEC's case is based on two facts: (1) defendants along with eight other individuals, attended a hunting trip together in Canada; and (2) upon return, Dupuis purchased stock in Warrior Energy, a company in which Hollier was a board member, a merger between Warrior Energy and another oil company was announced several days later and Dupuis made a profit of approximately $40,000. *R. 71.* Hollier contends that "since the SEC began its investigation, [the SEC] has taken pre-suit testimony from at least five individuals, conducted eleven depositions, had ample time to conduct written discovery, and had received and reviewed countless documents, but still cannot come up with sufficient evidence to support its case." *Id.* Hollier maintains that the SEC has never had "a scintilla of evidence" that he ever conveyed material nonpublic information about the merger to Dupuis. *Id.*

In its opposition to defendants' motions, the SEC reiterates the Court's prior holding that insider trading can be appropriately based upon circumstantial evidence, *R. 30; 33, Order adopting 12/17/09 R&R*, and argues that defendants' motions must be denied because material facts are in dispute as to circumstantial evidence supporting an inference that insider trading has occurred. *R. 83.* Specifically, the SEC cites factual disputes "concerning the implausibility of Dupuis's explanation under oath that he initially volunteered to the SEC investigators, as to his motivation to buy Warrior Energy stock, and precisely what Hollier knew regarding whether the merger negotiations were sufficiently advanced at the time that he, Dupuis and others went on the September 2006 hunting trip, as well as at the time Dupuis bought his Warrior Energy stock." *Id.*

To establish insider trading, the SEC must prove by a preponderance of the evidence

that the tipper was in possession of material, nonpublic information, that the tipper tipped this information to the tippee, and that the tippee purchased and sold stock based on the inside information given to him. *See S.E.C. v. Warde*, 151 F.3d 42, 46-47 (2d Cir.,1998) (citing *Dirks*, 463 U.S. 646, at 660 (1983))*; SEC v. Cherif*, 933 F .2d 403, 408-09 (7th Cir.1990). "Scienter requires that the insider (or tippee, if the trader is not the insider) possess material nonpublic information at the time of the trade." *SEC v. Ginsburg*, 362 F.3d 1292, 1297-98 (11th Cir. 2004) (quoting *SEC v. Adler*, 137 F.3d 1325, 1340 (11th Cir. 1998)). "Proof of knowledge of such information at the time of a trade 'gives rise to a strong inference of use.'" *Id.*

A plaintiff can demonstrate that a tippee possessed material non-public information through either direct evidence "such as testimony from a witness who actually saw, heard, or touched the subject of questioning," or through inference created by circumstantial evidence. *SEC v. Ginsburg*, 362 F.3d 1292, 1298 (11th Cir.2004). Circumstantial evidence is a legitimate form of evidence, and in fact-intensive cases, the jury is the appropriate body to determine a defendant's guilt or innocence. See, e.g., *United States v. McDermott*, 245 F.3d 133, 139 (2d Cir.2001); *SEC v. Sargent*, 229 F.3d 68, 75 (1st Cir.2000) ("[A]plaintiff is not required to produce direct evidence; 'circumstantial evidence, if it meets all the other criteria of admissibility, is just as appropriate as direct evidence and is entitled to be given whatever weight the jury deems it should be given under the circumstances within which it unfolds.'"); *Michaels v. Michaels*, 767 F.2d 1185, 1199 (7th Cir.1985) (stating that scienter can be inferred from circumstantial evidence in an insider-trading case).

In *U.S. v. Larrabee*, 240 F.3d 18, 21-22 (1st Cir. 2001), the United States Court of Appeals for the First Circuit held that circumstantial evidence may be used to prove insider trading, including: (1) access to information; (2) relationship between the tipper and the tippee; (3) timing of contact between the tipper and the tippee; (4) timing of the trades; (5)

6

"pattern of the trades; and, (6) attempts to conceal either the trades or the relationship between the tipper and the tippee. *Id.* "[C]ircumstantial evidence such as suspicious timing of trades, contacts between potential tippers and tippees, and incredible reasons for such trades provide an adequate basis for inferring that tipping activity has occurred." *SEC v. Singer*, 786 F.Supp. 1158, 1164-65 (S.D.N.Y.1992). The court must determine "whether the quantity and quality of proof showing defendants' possession of information is sufficient as a matter of law to allow the case to proceed to trial. Sufficiency is evaluated with respect to the evidence presented to the Court in the form of pleadings, depositions, affidavits, etc., in light of the rule that the evidence put forth by the SEC, as non-movant, is to be believed, and all justifiable inferences are to be drawn in its favor, *Anderson*, 477 U.S. at 256, as long as such inferences are supported by facts that would be admissible in evidence. Fed.R.Civ.P. 56." *Id.*

The record reflects that prior to the SEC filing this action, Dupuis provided sworn testimony in the SEC investigation on November 20, 2008. *R. 83-3, SEC Invest. Test. of Dupuis*. Dupuis started that he began following Warrior Energy as a potential investment after he learned at some point in 2006 that Hollier was a director at the company, because Hollier had a business track record that "everything [he] touch[ed] turns to gold." *Id., pp. 10-11*. Dupuis also stated that when he bought Warrior Energy shares, he had become aware of the contemplated merger when he "went fishing" at a Labor Day bass tournament in Henderson, Louisiana. *Id.* While standing at the tournament bar, also referred to as "Turtle's Bar," Dupuis stated he overheard two men with Superior Energy Service logo shirts sitting at the bar discussing the possibility of Superior Energy buying Warrior Energy. In a written description of the alleged encounter Dupuis stated:

> I overheard a conversation between 2 men wearing Superior Energy logo shirts. One said to the other: 'Did you hear anything about us buying out Warrior Energy.' The other man said 'Yeah, I heard the same thing'. 'When

> do you think it is going to happen?' 'I'm not sure.' Then they saw me at the take out window and stopped talking and left the bar."

*Id., Exh. 27.*

In support of their position, the SEC asserts that an SEC staff telephoned Dupuis to give him a "Wells notice"[6] in early March 2009 and told him that no fishing tournament took place at Atchafalaya Basin Landing in Hendersonville, Louisiana on Labor Day, and there was no record of Dupuis being in a tournament at Atchafalaya Basin Landing. *R. 83-6.* Thereafter, on April 9, 2009, Dupuis' counsel submitted written correspondence to the SEC in response to the Well's notice stating that Dupuis was mistaken that the tournament was on Labor Day, rather, the tournament was 2 weeks earlier on August 17, 2006. *Id.* The submission further stated that records of fishing tournaments are not kept, but that he had fished earlier in the day with a friend, Don Kennon. *Id.* While Kennon qualified to fish in the tournament, Dupuis did not. *Id.* Dupuis stated that Kennon fished with his grandson, Grant Boudreaux, and he waited at the landing for the "weigh-in." *Id.* Dupuis attached a list of the 32 participants in the August 17, 2006 "4th Annual Classic King of Henderson Tournament" which he received in the form of a sworn statement from Don Olivier, the tournament organizer, as well as the affidavit of Don Kennon. *Id., Exh. A, Exh.D.* The list included Kennon and Boudreaux which was verified in Kennon's affidavit. *Id.* Dupuis stated that the men at the bar he overheard discussing Superior Energy buying Warrior Energy were not tournament participants and therefore their names are impossible to determine. *Id.*

The SEC argues that several facts show that Dupuis' revised account is not credible:

---

[6] A "Wells notice" is a notification that the SEC staff plans to recommend to the Commission an enforcement action against specific defendants and invites the proposed defendant to explain why he should not be sued by the Commission.

(1) of the nine Superior Energy employees with knowledge of the merger as of August 17, 2006, none entered or attended the fishing tournament, or visited Turtles Bar, *R. 83- 8, Exh. 3, Dec. of Hardin, ¶¶ 1-15*; (2) none of the participants in the tournament were employees or contractors affiliated with Superior Energy, *Id. at ¶¶ 7-12*; (3) as of August 17, 2006, the merger discussions between Warrior Energy and Superior Energy were still at a very early stage because Superior Energy's interest in the merger had not been disclosed to Warrior Energy's President and CEO until July 28, 2006, and knowledge of the merger was limited to a small group of high-level employees at each company,[7] *R. 83-9, Exh. 4, Dec. of Masters, Vice Pres. & Gen. Counsel for Superior Energy, ¶¶ 9-12, Exh. 4-A, 10/20/06 Letter from Masters to NASD, pp. 2-4*; and, (4) the merger was not the "subject of public speculation or industry chatter prior to the formal announcement of the transaction," *R. 83-4, Exh. 2, Dec. of M. Graham Loomis, SEC Regional Director*, ¶ 6. The SEC further argues that Dupuis' story is not plausible because: (1) he would have waited almost five weeks from allegedly hearing of the possible transaction before purchasing Warrior Energy shares; (2) Dupuis' friend, Kennon, did not overhear the alleged conversation; and, (3) Dupuis did not mention overhearing this conversation to Kennon. Finally, the SEC contends that Dupuis' November 20, 2008 testimony was evasive and inconsistent in that he initially stated he could not remember attending the September 2006 hunting trip with Hollier, *R. 83, p.37*, then testified that Hollier told him Warrior Energy was "a good buy" on the September 2006 hunting trip, *Id. at pp. 40-42*, but later testified that the conversation had taken place before the hunting trip, *Id. at pp. 60-63*.

Defendants maintain that Dupuis provided a reasonable explanation for his Warrior

---

[7] Masters stated that Warrior Energy's Board of Directors learned of "the discussions with Superior Energy" on August 28, 2006, and on the same day senior executives of Superior Energy and Warrior Energy met to discuss related issues. *Id.*

9

Energy stock purchase which did not involve an insider and that the SEC has not been able to marshal evidence of any "plus factors"[8] "which imply guilt or suggest deception" on the part of either Hollier or Dupuis. *R. 71.* In support of their position defendants contend that: (1) Dupuis presented the SEC with an innocent explanation for his trade; (2) Hollier and Dupuis did not have a significant personal relationship to motivate Hollier to give Dupuis a tip; (3) the timing of Dupuis' trade was not at the first available opportunity; (4) Dupuis made one trade so there is no pattern of trading; (5) the trade was insignificant in comparison to Dupuis' net worth; and (6) neither Hollier nor Dupuis attempted to conceal the trade or their relationship.

Contrary to defendants' contentions, the SEC has offered direct evidence connecting Dupuis to Hollier as well as sufficient circumstantial evidence to allow this case to proceed to trial. *See e.g., Singer*, 786 F.Supp. at 1169 ("In the final analysis, the assessment of the existence or absence of [circumstantial evidence] requires a series of factual findings and generally rests with the finder of fact, i.e., the jury, at trial."). The record confirms that Hollier and Dupuis have maintained a friendship since they played together on their high school football team, *R. 83, Hollier Test., p. 54; R. 83, Dupuis Test., pp. 18-19, 23* and from September 13, 2006 through September 17, 2006, Hollier and Dupuis attended a duck and goose hunting trip together in Peace River, Canada. *Hollier Test., pp. 55-57; Dupuis Test., pp. 37-38.* The SEC contends that "[a]lthough Hollier and Dupuis deny that they specifically discussed the merger agreement during the hunting trip, ... each admitted some limited

---

[8] Defendants contends that the Court should consider "The 'Plus Factor' Rule" as stated by "one commentator," Thomas O. Gorman. *Thomas O. Gorman, Is Evidence of Contacts Followed by Trading Sufficient to Infer and Prove an Insider Trading Case? The "Plus Factor" Rule,* 34 SEC REG. L. J. 178, 178 (Fall 2006). Defendants have not cited and the Court is unaware of any jurisprudence citing "the Plus Factor Rule." As previously noted, however, courts may use "circumstantial evidence such as suspicious timing of trades, contacts between potential tippers and tippees, and incredible reasons for such trades provide an adequate basis for inferring that tipping activity has occurred. *SEC v. Singer*, 786 F.Supp. 1158, 1164-65 (S.D.N.Y.1992).

discussion of Warrior Energy during the trip." The record indicates that in his November 19, 2008 investigative testimony Hollier stated that another man at the hunt who owned Warrior Energy stock asked him what was "wrong" with Warrior Energy presumably referring to Warrior Energy's "deteriorating" share price. *Hollier Test., p. 61*. Hollier's reply that "fundamentally, there was nothing wrong with the stock," lasted "two or three minutes." *Id.* Thereafter, Dupuis asked, "What company are y'all talking about," to which Hollier replied, "Warrior Energy." *Id. at pp. 61-62*.

The record also includes Dupuis' investment reports from Fidelity Brokerage Services, LLC ("Fidelity") where he had over $2 million in his accounts. *R. 71, Exh. C, ¶18*. The Fidelity records reveal that after the market closed on September 18, 2006, the day he returned from the hunting trip, Dupuis purchased 5,000 shares of Warrior Energy through an investment account held at $17 per share, for a total cost of $85,000. *R. 83-3, pp. 10, 12, 15-17, 36, Exh. 26, pp. 2 & 4*. The Warrior Energy-Superior Energy merger occurred on September 25, 2006. *R. 71*. On October 2, 2006, one week after the merger, Dupuis sold all his Warrior Energy shares at a price of $25.36 per share, realizing a profit of $41,800. *Id., Exh. 28, p. 4*.

More significantly, the SEC has provided evidence of inconsistent statements on Dupuis' part that support an inference of guilty knowledge. In the Sworn Declaration of Pauline F. Hardin, Superior Energy' legal counsel in connection with the SEC's investigation, Hardin avers she received from the SEC a list of the 32 individuals who entered the "Classic King of Henderson" fishing tournament on August 17, 2006 in the form of a sworn statement from Don Olivier, the tournament sponsor. *Id.* At the request of the SEC, Superior Energy representatives confirmed to Hardin that none of the individuals were employed by or affiliated with Superior Energy as of August 17, 2006, and that none of the

nine individuals identified by William B. Masters, Superior Energy's General Counsel, as having knowledge of the merger agreement attended the August 17, 2006 fishing tournament nor told any one out side the nine of the possible merger.

Defendants filed a Motion To Strike, arguing that the Court should strike paragraphs 10 through 15 of Hardin's declaration as constituting inadmissible hearsay under Rule 56. *R. 88.* In its opposition to the motion to strike, the SEC argues that Hardin's declaration is admissible as a business record, under Rule of Evidence 803(6) and (7), and as evidence from a summary witness. *R. 92.* Also in its opposition memorandum, the SEC attached declarations from all nine individuals from whom Hardin obtained the information underlying her declaration. *R. 92, Exh. 1, Sworn Declarations of Robert Taylor, Ross Burkenstock, Greg Rosenstein, Alan P. Bernard, Kenneth Blanchard, Guy Cook, Charles Hardy, Terry Hall, and Carolyn Plaisance.* The declarations confirm the information in Hardin's Declaration and the Declaration of Masters, *R. 83-9, Exh. 4 & 4-A*, that as of August 17, 2006, only a few executive officers at Superior Energy were aware that "Superior Energy had an interest in possibly acquiring Warrior Energy." *R. 92, Exh. 1.* The Court has not considered paragraphs 10 through 15 of Hardin's Declaration, and therefore, defendants' Motion To Strike will be granted as to paragraphs 10 through 15.

Based on the evidence before it, in particular, the facts which are inconsistent with the "innocent" explanation offered by Dupuis, as well as the relevant jurisprudence, and upon drawing reasonable inferences in the SEC's favor, the Court finds that the SEC has set forth sufficient circumstantial evidence to raise a genuine issue of fact for the jury as to whether a direct tipping between Dupuis and Hollier took place about the merger. Accordingly, Hollier's and Dupuis' motions for summary judgment will be denied and Hollier's motion to strike will be granted.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Securities & Exchange Commission  Civil Action No. 6:09-CV-0928

versus  Judge Tucker L. Melançon

Hollier, et al  Magistrate Judge Hanna

## JUDGMENT

In accordance with the Memorandum Ruling issued on this date, it is

ORDERED that the Motions for Summary Judgment filed by defendants, Robert L. Hollier, [Rec. Doc. 71] and Wayne A. Dupuis [Rec. Doc. 75] are **DENIED**.

**IT IS FURTHER ORDERED** that the Motion To Strike filed by defendants Robert L. Hollier [Rec. Doc. 88] is **GRANTED**.

Thus done and signed this 18th day of January, 2011 at Lafayette, Louisiana.

_____
Tucker L. Melançon
UNITED STATES DISTRICT JUDGE